IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ELMER AYALA,

    Petitioner,

    v

J SOLIS, Acting Warden,

    Respondent.

No C 03-5613 VRW (PR)

ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS

    Before the court is petitioner Elmer Ayala's petition for a writ of habeas corpus pursuant to 28 USC § 2254. Petition (Doc #1). Petitioner seeks relief based on the following three claims: (1) he was denied due process because the trial court failed to sua sponte instruct the jury on the defense of accident or misfortune under CALJIC No 4.45; (2) he was deprived of effective assistance of counsel because his trial counsel failed to request the court to instruct the jury on CALJIC No 4.45; and (3) he was denied due process because the trial court failed to grant him a new trial based on juror misconduct. For the reasons that follow, the court DENIES the petition for a writ of habeas corpus.

I

On July 22, 2002, petitioner was convicted by a jury in the Superior Court of the State of California in and for the County of Mendocino of assault with a deadly weapon. Petitioner admitted to a prior felony conviction within the meaning of California's Three Strikes Law and was sentenced to six years in state prison. He is currently serving his sentence at the Correctional Training Facility in Soledad, California.

On May 21, 2003, the California Court of Appeal affirmed the judgment of conviction and, on August, 13, 2003, the Supreme Court of California denied review.

On December 15, 2003, petitioner filed this instant petition for a writ of habeas corpus. The court found that it stated cognizable claims for relief, when liberally construed and ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent has filed an answer and petitioner has filed a response/traverse.

II

The California Court of Appeal summarized the factual background of the case as follows:

> [D]efendant met the victim in this case at the Welcome Inn bar in Fort Bragg, at approximately 10 pm on December 12, 2001. When the bar closed at 2 am, they bought a 12-pack of beer and left the bar. The two, intoxicated, walked to the victim's apartment, where the victim resided with his wife and two children. After reaching the apartment, defendant and the victim drank two more beers each; the victim then announced that he was sleepy and wished to go to bed. He told defendant to leave, but defendant refused.

2

Defendant wanted to continue drinking, but the victim stood up and insisted that defendant leave the apartment. Defendant called the victim a "son of a bitch" and told the victim to "go to hell." The victim tried to push defendant out of the apartment and defendant pulled out a knife. The victim backed around the living room. Defendant followed and stuck the victim in the stomach with the knife. Defendant then ran out of the apartment. The victim woke up his wife, who saw that he was bleeding from a stomach wound. She attempted to treat the injury and called the police. There were four beer cans left in the living room, but there was no sign of a struggle other than one ornament that was knocked off the Christmas tree.

When the police arrived, they found the victim sitting on the couch, holding his bloody abdomen, and smelling of alcohol. The responding officer found a hat and empty leather knife sheath on the front porch. He saw no blood on the porch or in the living room, nor did he see any signs of a struggle. He did not locate a weapon. The officer broadcast description of the suspect (later identified as defendant), who was stopped 12 blocks away. He had dried blood on the back of his hands and some on one nostril. He was extremely intoxicated. Defendant was shown the hat found on the victim's porch and denied that it was his, claiming he gave it to a friend with whom he was drinking at the bar. Defendant did not know where he had been drinking and denied having been in a fight. He did not admit having been at the victim's apartment.

The victim later identified defendant from a photographic lineup. The victim was treated at the hospital for a six-centimeter laceration in the upper right quadrant of his abdomen that was at least two inches deep.

The defense presented evidence at the trial, including prior statements to the police by the victim, that indicated he fought with defendant outside the apartment and that he told his mother and wife that he ran into the kitchen and living room before he was stabbed inside the apartment. Defendant testified that he went to the Welcome Inn bar and saw the victim snorting drugs in the bathroom. Defendant said he drank

3

two beers at the bar, and when it closed, the victim asked him to walk him home because he was high and drunk. The victim bought a 6-pack from the bar and they walked to his apartment, where they sat on the couch and drank the beer. After about 35 minutes, defendant announced that he had to go to work. The victim then grabbed defendant in the buttocks and told him that he wanted to have sex with him. Defendant told the victim that he was high and crazy and that he, defendant, was not a homosexual. Defendant shouted that he was leaving. The victim told defendant not to shout and punched him, making his nose bleed. Defendant fell back and his sheathed knife fell out of his pocket. Defendant picked it up and saw that the victim was ready to hit him. The victim saw defendant's knife and ran to the kitchen, retrieving a knife of his own. Meanwhile, defendant had thrown his knife down to try to open the lock on the front door, in order to leave. The victim pulled back defendant's hair; he was holding a knife. The victim hit defendant, who pushed back, causing the victim to trip on the sofa legs and fall. Defendant opened the door and ran.

**People v Ayala**, No A099713, 2003 WL 21198246, at \*\* 2-3 (Cal Ct App May 21, 2003).

### III

A federal writ of habeas corpus may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 USC § 2254(d).

4

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v Taylor, 529 US 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id at 409.

The only definitive source of clearly established federal law under 28 USC § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id at 412; Clark v Murphy, 331 F3d 1062, 1069 (9th Cir 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

5

**IV**

**A**

**1**

Petitioner sets forth three claims in support of his petition for a writ of habeas corpus. The court turns first to petitioner's claim that the trial court's failure sua sponte to instruct the jury on the defense of accident or misfortune under CALJIC No 4.45, violated his due process. CALJIC No 4.45 provides that "[w]hen a person commits an act or makes an omission through misfortune or by accident under circumstances that show [neither] [criminal intent [n]or purpose [nor] [criminal] negligence, [he] ... does not thereby commit a crime."

In reviewing petitioner's claim, the California Court of Appeal applied the test set forth in People v Sanchez, 131 Cal App 3d 718, 735 (1982), which provides that a duty to instruct sua sponte arises only if (1) it appears the defendant is relying on such a defense, (2) there is substantial evidence supporting it and (3) the defense is not inconsistent with the defendant's theory of the case. Applying this test, the court concluded that the trial court did not err in not giving this instruction sua sponte because

> defendant's theory of the case, including his appellate argument, is that the victim may have fallen on his own knife, not that the defendant accidentally stabbed the victim. Under these circumstances, there was not evidence that defendant was relying on the defense of accident, as it is defined in CALJIC No 4.45, nor is there substantial evidence supporting the giving of that instruction, nor is the CALJIC instruction consistent with defendant's theory of the case.

People v Ayala, 2003 WL 21198246, at *2.

6

**2**

A state trial court's refusal to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceedings. See <u>Dunckhurst v Deeds</u>, 859 F2d 110, 114 (9th Cir 1988). The omission of an instruction is less likely to be prejudicial than a misstatement of the law. See <u>Walker v Endell</u>, 850 F2d 470, 475-76 (9th Cir 1987) (citing <u>Henderson v Kibbe</u>, 431 US 145, 155 (1977)). The error must so infect the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment. See id. Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "'especially heavy burden.'" <u>Villafuerte v Stewart</u>, 111 F3d 616, 624 (9th Cir 1997) (quoting <u>Henderson</u>, 431 US at 155).

An examination of the record is required to see precisely what was given and what was refused and whether the given instructions adequately embodied the defendant's theory. See <u>United States v Tsinnijinnie</u>, 601 F2d 1035, 1040 (9th Cir 1979). The defendant is not entitled to have jury instructions raised in the precise terms he prefers. It suffices that the given instructions adequately embody the defense theory. See <u>United Staes v Del Muro</u>, 87 F3d 1078, 1081 (9th Cir 1996); <u>Tsinnijinnie</u>, 601 F2d at 1040. A determination is made whether what was given was so prejudicial as to infect the entire trial and so deny due process. See id. If constitutional error is found, the court also must find that the error had a substantial and injurious effect or influence in determining the

//

jury's verdict before granting relief in habeas proceedings. See <u>Calderon v Coleman</u>, 525 US 141, 146-47 (1998) (citing <u>Brecht v Abrahamson</u>, 507 US 619, 637 (1993)).

### 3

Applying California law to the facts of petitioner's case, the California Court of Appeal found that a duty to instruct on CALJIC No 4.45 did not arise. This court finds that petitioner is not entitled to federal habeas relief on his instructional error claim because the California Court of Appeal's rejection of the claim was not contrary to, or involved an unreasonable determination of, clearly established Supreme Court precedent, or involved an unreasonable determination of the facts.  28 USC § 2254(d).

The California Court of Appeal interpreted CALJIC No 4.45, to require that petitioner must affirmatively "<u>commit[] an act</u> * * * through misfortune or by accident" in order for this instruction to apply.  Absent contrary Supreme Court precedent, this court must give deference to the California Court of Appeal's reasonable interpretation of its own laws. See <u>Hicks v Feiock</u>, 485 US 624, 629 (1988).

Applying <u>Sanchez</u>, the California Court of Appeal found that petitioner did not rely on an accident or misfortune theory of defense as defined under CALJIC No 4.45, nor that was there substantial evidence in the record to support an instruction inconsistent with petitioner's primary defense theory. This determination was not objectively unreasonable.

Petitioner testified that he did not stab the victim

8

purposefully or accidently in self-defense.  Pet's Testimony, Exhibit D8 in Support of State Courts' Answer (Doc #8) at 143:24-27. Not surprisingly, petitioner presented no evidence, nor is there evidence in the record, to support an accident or misfortune defense.  Quite to the contrary, petitioner presented evidence consistent with his assertion that he never stabbed the victim and that "the victim may have fallen on his own knife."  Pet's Closing Argument, Exhibit D8 in Support of State Courts' Answer (Doc #8) at 184:26-27.  At trial, for example, he testified that he "pushed [the victim]" when the victim attempted to hit him, causing the victim to "trip[] up on the sofa."  Petitioner then "opened the door" "to get out of the house."  Pet's testimony at 143:2-13.

Due process does not require that an instruction be given unless the evidence supports it.  See <u>Hopper v Evans</u>, 456 US 605, 611 (1982); <u>Miller v Stagner</u>, 757 F2d 988, 993 (9th Cir), amended, 768 F2d 1090 (9th Cir 1985).  Here, petitioner's evidence supported his primary defense theory that he "ran" and did not stab the victim.  It did not show a struggle between the victim and petitioner, which would likely exist had petitioner in fact acted in "self-defense."  Furthermore, the lack of evidence to support an accident or misfortune defense demonstrates that petitioner was not, in fact, relying on this defense.

Moreover, had CALJIC No 4.45 been given, it could have prejudiced the petitioner.  The jury could have wrongly misconstrued this to mean that petitioner, in fact, stabbed the victim, a theory which is inconsistent with petitioner's primary defense.

Based on the lack of evidence to support CALJIC No 4.45

9

and to indicate that petitioner was relying on such an instruction in addition to the inconsistency of such an instruction with petitioner's primary defense, the California Court of Appeal did not unreasonably find that such an instruction was unwarranted. Petitioner is not entitled to federal habeas relief on his claim that he was denied due process because the trial court failed to sua sponte instruct the jury on CALJIC No 4.45.  See 28 USC § 2254(d).

### B

#### 1

The court turns next to petitioner's claim that he was denied effective assistance of counsel because his trial attorney failed to request an instruction of accident or defense under CALJIC No 4.45.

The California Court of Appeal rejected petitioner's claims on the ground that he failed to meet his burden of proof to show unreasonableness and prejudice under Strickland v Washington, 466 US 668 (1984).  The court explained:

> [G]iven the fact that the instruction was not supported by the evidence, was inconsistent with the defense, and that the defense was not relying upon the defense of accident or misfortune, defense counsel's failure to request an instruction on that defense can hardly be said to fall below an objective standard of reasonableness, nor can any prejudice to defendant have resulted.

People v Ayala, 2003 WL 21198246, at *3.

#### 2

Under Strickland, petitioner must establish two things.

10

1  First, he must establish that counsel's performance was deficient,
2  ie, that it fell below an "objective standard of reasonableness"
3  under prevailing professional norms.  <u>Strickland</u>, 466 at 687-88.
4  The relevant inquiry is not what defense counsel could have done,
5  but rather whether the choices made by defense counsel were
6  reasonable.  See <u>Babbitt v Calderon</u>, 151 F3d 1170, 1173 (9th Cir
7  1998).  Judicial scrutiny of counsel's performance must be <u>highly
8  deferential</u>, and a court must indulge a strong presumption that
9  counsel's conduct falls within the wide range of reasonable
10 professional assistance.  See <u>Strickland</u>, 466 US at 689.
11             Second, petitioner must establish that he was prejudiced
12 by counsel's deficient performance, ie, that "there is a reasonable
13 probability that, but for counsel's unprofessional errors, the
14 result of the proceeding would have been different."  Id at 694.  A
15 reasonable probability is a probability sufficient to undermine the
16 confidence in the outcome.  Id.

                                    3

19             The California Court of Appeal's rejection of petitioner's
20 ineffective assistance of counsel claim was not contrary to, or
21 involved an unreasonable application of, clearly established Supreme
22 Court precedent, or was based on an unreasonable determination of
23 the facts.  See 28 USC § 2254(d).
24             Under <u>Strickland</u>, petitioner must first establish that
25 trial counsel's failure to seek CALJIC NO 4.45 fell below an
26 objective standard of reasonableness.  He does not.  First, as
27 previously discussed (see IV A 3), the instruction did not apply to

the facts of the case. Second, trial counsel argued that petitioner did not commit the act of stabbing the victim. Because this instruction required petitioner to "commit[] an act" (ie, stabbing the victim), in order for the accident or misfortune defense to apply, such an instruction could have harmed petitioner's case. Finally, petitioner did not present evidence that the instruction was warranted. Trial counsel's decision not to request CALJIC No 4.45 cannot be said to have fallen below an objective standard of reasonableness.

Second, assuming petitioner made a showing under the first prong of Strickland, he must establish that he was prejudiced by trial counsel's failure to request CALJIC No 4.45. To show prejudice under Strickland from failure to file a motion, petitioner must show that "(1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him." Wilson v Henry, 185 F3d 986, 990 (9th Cir 1999).

There is no such showing here. First, the instruction was inconsistent with petitioner's primary defense that he did not stab the victim. Second, there was not substantial evidence in the record to support an instruction that petitioner stabbed the victim accidentally given the fact that petitioner relied on and provided evidence for a defense that he did not commit this act. If counsel had made a motion for such an instruction, it cannot be said that it is reasonable that the trial court would have granted it as meritorious, nor can it be said that it is reasonable that had the

**12**

1 motion been granted there would have been an outcome more favorable
2 to the petitioner. See id.
3   The California Court of Appeal reasonably applied the
4 Strickland standard in rejecting petitioner's ineffective assistance
5 of counsel claim. Petitioner is not entitled to federal habeas
6 relief on his ineffective assistance of counsel claim. See 28 USC
7 § 2254(d).

### C

#### 1

Finally, the court turns to petitioner's claim that he was denied due process because the trial court failed to grant him a new trial based on juror misconduct.

The California Court of Appeal provided the following background for petitioner's claim of jury misconduct:

> During deliberations, it was discovered that one of the jurors had announced, in the presence of the panel, that he remembered defendant's name from the Mendocino county "PUFF" (Psychiatric Health Facility or PHF). At a hearing regarding the alleged misconduct, the jury foreperson indicated that the other jurors asked the offending juror if he had actually seen defendant or just heard his name, and the juror in question replied that he had not seen defendant. After hearing this, the trial court assembled the panel, reread CALJIC 1.02 (which admonishes the jury not to consider the statements of counsel as evidence), and explained that the jurors were not to consider the statement by the offending juror, just as they could not consider the statements of attorneys as evidence. The court also read a portion of CALJIC 2.03, which admonishes the jury not to make independent investigations and that they must decide all questions of fact from the evidence received in the trial, and not from any other source, indicating that they could not

13

> consider, for example, matters they "heard out on the street." After asking each juror if he or she could follow these instructions and ignore any information they had received about defendant being connected with PHF, and receiving an affirmative response from each juror, the trial court denied defendant's motion for mistrial.

People v Ayala, 2003 WL 21198246, at *3.

To determine whether petitioner succeeded in his claim for jury misconduct, the California Court of Appeal applied the following test:

> [1]" * * * 'defendant must show misconduct on the part of a juror; [2] if he does, prejudice is presumed; the state must then rebut the presumption or lose the verdict. [Citation]' [Citation.]" People v Rodrigues, 8 Cal 4th 1060, 1178, (Cal Dec 1, 1994).

Id at 3. Assuming that petitioner met the first prong of the test for jury misconduct, the court rejected the claim because it

> perceive[d] no resulting prejudice. Given the information received by the trial court during its hearing on this matter, which delineated the limited information revealed by the offending juror, and the procedure the trial court employed to remind the jury of the instructions to not consider information not received in trial, to specifically instruct them to ignore the information they received from the juror, and to assure they could follow these instructions,[the court saw] little or no possibility that any prejudice could have resulted from the juror's conduct.

Id.

2

A federal court reviewing a habeas claim of juror

14

1 misconduct may grant relief only if it can be established that the
2 exposure to extrinsic evidence had a "'substantial and injurious
3 effect or influence in determining the jury's verdict.'"  Sassounian
4 v Roe, 230 F3d 1097, 1108 (9th Cir 2000) (quoting Brecht v
5 Abrahamson, 507 US 619, 623 (1993)); see Jeffries v Blodgett, 5 F3d
6 1180, 1190 (9th Cir 1993) (same).  In other words, the error must
7 result in "actual prejudice."  See Brecht, 507 US at 637.
8      Several factors are relevant in determining whether the
9 alleged introduction of extrinsic evidence constitutes reversible
10 error:

> (1) whether the extrinsic material was actually
> received, and if so, how; (2) the length of time
> it was available to the jury; (3) the extent to
> which the jury discussed and considered it; (4)
> whether the material was introduced before a
> verdict was reached, and if so, at what point in
> the deliberations it was introduced; and (5) any
> other matters which may bear on the issue of
> * * * whether the introduction of extrinsic
> material [substantially and injuriously]
> affected the verdict.

17 Lawson v Borg, 60 F3d 608, 612 (9th Cir 1995) (quoting Bayramoglu v
18 Estelle, 806 F2d 880, 887 (9th Cir 1986), and incorporating Brecht)
19 (sic in original).

21                                  3

22      The California Court of Appeal's rejection of petitioner's
23 claim for a new trial because of jury misconduct was not contrary
24 to, or involved an unreasonable application of, clearly established
25 Supreme Court precedent, or was based on an unreasonable
26 determination fo the facts.  See USC § 2254(d).
27      The California Court of Appeal reasonably determined

15

that the trial court cured any potential possibility of prejudice when it (1) spoke to the jury, (2) advised them to disregard the juror's statement regarding petitioner's name possibly being on a PHF list and (3) confirmed that such information would not bias any juror.

This conclusion is supported by the fact that the information discussed by the juror was vague in nature and unrelated to the issue at trial, ie, whether petitioner assaulted the victim with a deadly weapon. See <u>Lawson</u>, 60 F3d at 612. Furthermore, there is no indication that the jury discussed and considered the improper information in coming to their verdict, especially viewed in conjunction with the fact that the trial court advised them to disregard the improper information. See id.

Petitioner raises various additional grounds for relief for the first time in his traverse. It is, however, well-established that a traverse is not the proper pleading to raise additional grounds for relief. See <u>Cacoperdo v Demosthenes</u>, 37 F3d 504, 507 (9th Cir 1994). Based on the record, it cannot be said that the California Court of Appeal's determination that petitioner was not prejudiced by juror misconduct was objectively unreasonable. Petitioner is not entitled to federal habeas relief on his jury misconduct claim. See 28 USC § 2254(d).

//
//
//
//
//

16

V

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The clerk shall ENTER JUDGMENT in favor of respondent, CLOSE the file and TERMINATE all motions.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge